Richard R. REYNOLDS, Jr., Joseph Zazo, Luis Raul Santiago Alvarado, and Larry Gaul, Jr.

v.

David BUCKS, Deputy Warden, Elliot Werst, Asst. Warden, George Wagner, Warden, Berks County Board of Prison Inspectors.

Civ. A. No. 93–2548.

United States District Court, E.D. Pennsylvania.

Oct. 1, 1993.

Richard R. Reynolds, Jr., pro se.

Joseph Zazo, pro se.

Luis Raul Santiago Alvarado, pro se.

Larry Gaul, Jr., pro se.

Robert T. Ullman, Reading, PA, for defendants.

---

*MEMORANDUM*

BARTLE, District Judge.

Plaintiff inmates instituted this pro se civil rights action pursuant to 42 U.S.C. § 1983,[1] against officials of the Berks County Prison and the Berks County Board of Prison Inspectors. At that time, the four plaintiffs were incarcerated in Berks County Prison; however, two plaintiffs have since been released. Plaintiffs allege that the Berks County Prison's recently implemented no smoking policy violates their constitutional rights under the Fifth, Fourteenth and Eighth Amendments. The defendants have moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.[2] Because defendants, as well as plaintiffs, have submitted affidavits to this court, defendants' motion will be treated as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[3]

On May 15, 1993, officials of the Berks County Prison instituted a policy prohibiting smoking by prison inmates. According to the Affidavit of George Wagner, Warden of the Berks County Prison, "[t]he policy is designed to promote the health and safety of those individuals living and working at Berks County Prison," and is based on a determination that "smoking and other forms of tobacco use pose a significant risk to both the user's and non-user's health. It damages sensitive equipment and presents safety and sanitation hazards." (Wagner affidavit at 1). To help habitual smokers adjust to the ban,

the prison authorities implemented a policy offering inmates the opportunity to take classes on how to overcome the craving to smoke. Plaintiffs contend that the policy serves no legitimate penological goal, but instead is a form of punishment which deprives them of their right to Due Process under the Fifth and Fourteenth Amendments[4] and their Eighth Amendment right to be free of cruel and unusual punishment.

The standards governing motions for summary judgment are well settled. In order for a motion for summary judgment to be sustained, the moving party must prove that there are no genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A "genuine" issue is one for which there is a sufficient evidentiary basis for a reasonable jury to find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A "material" fact is one that might affect the outcome of the action under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. For a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Invest.,* 951 F.2d 1399, 1404 (3d Cir.1991).

At the outset, it must be emphasized that there is "no constitutional right to smoke in a jail or prison." *Doughty v. Board of County Comrs.,* 731 F.Supp. 423, 426 (D.Colo.1989). Plaintiffs contend, however, that under the circumstances involved here,

1. 42 U.S.C. § 1983 provides in relevant part: Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

2. On July 7, 1993, this court denied plaintiffs' motion for a temporary restraining order and/or preliminary injunction.

3. Rule 12(b) of the Federal Rules of Civil Procedure provides in pertinent part, that:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ...

4. The Fifth Amendment is made applicable to the states through the Fourteenth Amendment. *Griswold v. Connecticut,* 381 U.S. 479, 488 n. 2, 85 S.Ct. 1678, 1683–84 n. 2, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring). Therefore, the Due Process claims will be analyzed under the Fourteenth Amendment.

the no smoking policy constitutes cruel and unusual punishment. In order to establish cruel and unusual punishment under the Eighth Amendment, plaintiffs must prove that the ban on tobacco use was implemented with an intent to punish and is not reasonably related to a legitimate governmental objective. *Bell v. Wolfish,* 441 U.S. 520, 538–39, 99 S.Ct. 1861, 1873–74, 60 L.Ed.2d 447 (1979). Additionally, plaintiffs must show that the ban violates "the evolving standards of decency that mark the progress of a maturing society" or that the ban involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (citations omitted).

■ As set forth above, the stated purpose of the prohibition is to eliminate health, safety and sanitation hazards and to protect electronic equipment in the prison. (Wagner affidavit at 1). These are legitimate governmental interests.[5] The fact that the prison draws a distinction between employees, who are allowed to smoke in designated areas and prisoners who are not, does not suggest that the intent of the prison is indeed punishment. According to the Prison Directive, employees and visitors are allowed to smoke only in the employee dining area, employee lounge, treatment conference room, break room in the medical department or outside prison buildings. (Wagner affidavit at 1). It is beyond question that there are numerous legitimate reasons to distinguish between the treatment of employees and prisoners. First, there are far fewer employees than prisoners. Moreover, the prison authorities are responsible for the health of inmates under their supervision to a greater extent than they are for their employees. It is also reasonable for defendants to conclude that employees can be trusted to smoke with greater care for safety and sanitation hazards and without damaging property and equipment.

Moreover, the prison conditions alleged by plaintiffs simply do not rise to the level of a constitutional violation. To be cruel and unusual punishment, the conditions must violate society's evolving standards of decency or constitute a wanton infliction of pain. Given the known health risks associated with smoking, and the fact that more and more office buildings, stores, restaurants, and public accommodations prohibit smoking, it cannot be said that a smoking ban conflicts with society's standards of decency. Although the lack of nicotine may be painful for some prisoners, the pain is neither unnecessary nor wanton.

Plaintiffs have alleged that the availability of programs and aids to help them adjust to the smoking ban have been inadequate. Specifically, plaintiffs assert that the promised classes are offered on only a limited basis, that they are not receiving the snacks that are supposed to be distributed as part of the program, and that consequently they have been suffering from the symptoms of withdrawal. In effect, plaintiffs contend that they have received inadequate treatment for their tobacco addiction. In order to establish a constitutional claim for lack of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. at 106, 97 S.Ct. at 292. Plaintiffs in the instant case concede that some programs are available to help them deal with their addiction. The mere fact that plaintiffs are dissatisfied with the type and scope of the programs does not amount to a constitutional violation. *See Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754 (3d Cir.1979).

---

**5.** As in its earlier opinion, this court takes judicial notice of the 1989 Surgeon General's report that states that smoking causes increases in the occurrence of lung cancer, cancer of the larynx, chronic bronchitis, coronary artery disease and peptic ulcer. U.S. Department of Health and Human Services, *Reducing the Health Consequences of Smoking, 25 Years of Progress,* Report of the Surgeon General, 1989. Environmental Tobacco Smoke (ETS), a known carcinogen released from the tip of a burning cigarette, is a health hazard for nonsmokers as well as smokers. A 1990 report, issued by the Environmental Protection Agency, contains findings that ETS is a cause of lung cancer in adults and that almost 4000 Americans die each year due to involuntary inhalation of ETS. Health Effects of Passive Smoking; Assessment of Lung Cancer in Adults and Respiratory Disorders in Children; External Review Draft, 55 Fed.Reg. 25875–01 (1990).

The plaintiffs allege that the prison guards taunt them while they, the guards, smoke in both restricted and unrestricted areas. While the court does not condone such conduct, if it exists, plaintiffs have not offered any evidence to establish that what occurred rises to the level where it has become violative of "evolving standards of decency" or constitutes "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 102–03, 97 S.Ct. at 290.

Furthermore, a defendant can only be liable under § 1983 if that defendant participated in or had personal knowledge of and acquiesced in the actions that deprived the plaintiffs of their constitutional rights. *Hodgin v. Roth*, 536 F.Supp. 454 (E.D.Pa.1982). The plaintiffs have not stated a claim against the guards who allegedly taunted them, and there is no evidence that the prison officials either encouraged or approved of the guards' alleged behavior. Despite the fact that the prison officials, who are the defendants in this case, are supervisors of the guards who allegedly ridicule the plaintiffs, they cannot be held responsible for the guards' behavior because there is no respondeat superior liability in § 1983 cases. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir.1976).

Plaintiffs have also failed to state a claim that they have been denied Equal Protection and Due Process under the Fourteenth Amendment. Although the prison staff is permitted to smoke in designated areas while the inmates are strictly prohibited from smoking anywhere on the prison premises, such a distinction is not violative of the Fourteenth Amendment. While it might be a more salutary policy to prohibit all smoking by employees and inmates alike, as stated above, it is not irrational to draw a distinction between the prison employees, who are not incarcerated, and the inmates, who are. Inmates are simply not entitled to all of the privileges enjoyed by those who are not incarcerated. The "fact of confinement as well as the legitimate goals and policies of the penal institution limits [inmates'] retained constitutional rights." *Bell v. Wolfish*, 441 U.S. at 546, 99 S.Ct. at 1877–78, citing *Jones v. North Carolina Prisoners' Labor Union*

*Inc.*, 433 U.S. 119, 125, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629 (1977).

Courts should defer to the judgment of administrators in matters affecting the health and safety of inmates. *See Bell*, 441 U.S. at 546–48, 99 S.Ct. at 1878–79. A prison's no smoking policy, which "is not arbitrary, purposeless, or intended to punish, is a matter to be left to prison or jail officials." *Doughty*, 731 F.Supp. at 428. In conclusion, Berks County Prison's no smoking policy does not deprive inmates of their constitutional rights. Therefore, defendants' motion for summary judgment will be granted.

### ORDER

AND NOW, this 1st day of October, 1993, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of the defendants to dismiss, which is treated as a motion for summary judgment, is GRANTED.

Judgment is entered in favor of defendants David Bucks, Elliot Werst, George Wagner, Berks County Board of Prison Inspectors and against plaintiffs Richard R. Reynolds, Jr., Joseph Zazo, Luis Raul Santiago Alvarado, and Larry Gaul, Jr.